People of the State of Illinois v. Jeffries, 412-0678, for the appellant, Mr. Schuster, for the appellee, Ms. Ambrose, Mr. Schuster, I'm sorry. You may proceed. Good morning, your honors. May it please the court, may it please the counsel. I'm Dwayne Schuster with the State Appellate Defender, and I represent the defendant, Felicia Jeffries. Mr. Jeffries was convicted of resisting a peace officer and causing injury, a Class 4 felony. The jury found Mr. Jeffries not guilty of three other charges, and he was sentenced to 30 months probation. I have raised two issues in the brief concerning the trial court's instructions to the jury relating to the elements of establishing the offense of resisting a peace officer with injury. Neither issue's instruction that I present in the brief was preserved in the trial court. However, this court recognized in People v. James in 2004 that fundamental fairness requires a trial court to give correct instructions relating to the elements of the offense, and that a failure to so provide the correct instructions can constitute plain error. And I respectfully request that the court consider the issues raised here as a matter of plain error, as it did in James. What was the offense in James? The offense was predatory criminal sexual assault. What was the element missing? It was a misleading instruction relating to the definition of penetration. The first issue concerns the trial court's instruction to the jury in effect that it could convict Mr. Jeffries of resisting a peace officer with injury, even if his act of resistance was not the most immediate or direct cause of the officer's injury. Following the language that corresponded to the elements of the offense set forth in the statute, the trial court did correctly instruct the jury that it must find beyond a reasonable doubt that the defendant's act of resisting was the proximate cause of an injury and abrasion to Officer Carlton's knee. The court further instructed the jury under IPI Criminal 4.24 that when I use the expression proximate cause, I mean a cause that in the natural or ordinary course of events produced the person's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury. With the language beginning, quote, it need not be the only cause, etc., in the second part of that instruction, the jury was instructed in effect that it need not find that the defendant's act of resisting was a direct or immediate cause of the officer's injury to establish the offense. Why is that? Because it instructed the jury that they can look for broader causation than what is most immediate or direct. Can there be multiple proximate causes? Yes, the case law recognizes that there can be multiple proximate causes, and the committee comment to IPI Criminal 4.24 recognizes that in the criminal law there can be multiple proximate causes. Is that all that that instruction said, that the defendant's behavior must be a proximate cause? That's what that instruction says. What's wrong with that? Well, what's wrong with that is what the IPI Committee focuses on in its comments to 4.24. It raises three salient points. First, although there are several criminal statutes in Illinois that refer to the concept of proximate cause, at least according to the IPI Committee comment, this was the only instance where they found that the statute specifically uses the phrase, the proximate cause. And second, the IPI Committee noted that specifically in cases involving resisting a peace officer with injury, it declined to take a position on whether the trial judge should instruct the jury using the language that begins, it need not be the only cause or the last or nearest cause. And third, when dealing specifically with the phrase, the proximate cause, in cases involving resisting a peace officer with injury, the committee specifically refers the trial judge and the parties to Silvanaller v. Milschewski, second district case out of 2008. Silvanaller stated that, quote, the definite article V particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of A or N. Justice Simon, that kind of answers the question that you asked. Didn't the issues instruction use the word, the? Yes, it did. So your complaint is the definition of proximate cause used A, even though the instruction used the? That's somewhat my complaint. Well, if there were no definition of proximate cause, you wouldn't have any argument at all, would you? Because the issues instruction says the proximate cause. I'm willing to agree with you on that. That's what's problematic is that definition. A potentially reversible error ambiguity in the definition of proximate cause. Yes. Not the issues instruction. It relates to the issues instruction and how the jury uses and applies that issues instruction. The issues instruction says it must be the proximate cause. Yes. Whereas the definitional instruction of proximate cause. It's kind of inconsistent with that. Well, what is the factual problem in this case? So that leaving aside the academic issue of A versus the definitive article or whatever, where is there a problem in the facts of this case concerning whether your client was a proximate cause or the proximate cause of the injury suffered? Well, the evidence was unclear and conflicted as to how. Tell me what you think the evidence showed. Well, on one hand, according to the state and the officers who testified, the officer suffered a knee abrasion when he was wrestling or tussling, however the term was used, with Mr. Jeffries on the sidewalk. According to the defense witnesses, including, I believe I'm getting this correct, Tamika Ellis testified and I believe Mr. Jeffries testified at some point that officers were kicking him and applying knees to his ribs and there was some testimony that a knee was applied to his ribs. And he was also arguing that he wasn't resisting, he was complying. Well, what is, from the defense point of view, what is your position, giving it the best case spin from the defense point of view, to account for the injuries that the officers said he suffered? The best spin that I can put on it is that they were not the direct result of Mr. Jeffries physically punching or kicking the officer. They were incidental to the movement and the scuffle that was going on. See, the problem is that answers the question, what they were not. My question is, what is your statement as to how to account for the injuries the officers suffered? Your Honor, are you speaking specifically to the knee abrasion injury? Because there are different injuries here. Well, that's a good question. To convict a defendant of this offense, what injuries would the jury have to find? That he was approximate cause of the knee abrasion. For this particular offense, the way it was stated in the indictment and the way it was stated in the instruction. Is the indictment a limiting matter? What did the instruction say about this subject? Did it say knee abrasion? Yes, the instruction specifically said a knee abrasion. Okay, so then the instruction says knee abrasion, then the focus has to be on that. What is the defense position on how you account for how the officer suffered that? The defense position is we don't know how he suffered that, but it wasn't because of Mr. Jeffries striking. Well, then pausing right there, that position then renders of no effect the difference between a and the. Isn't that correct? If whatever the cause was, it ain't me. Then whether we have the definitive article or the general article doesn't matter.  Well, it seems to me that since we're in a plain error context, and the plain error has to be using the wrong article, then I don't see how we can find plain error under these facts. I'm sorry, I've taken up too much of your time. Go ahead. No, that's quite all right, Your Honor. I would like to say with regard to my reference to People v. James, James is the culmination of a long line of cases, beginning with People v. Ogonzala, that has a common thread running through it. And the common thread is that it's the recognition that the jury is the bedrock underlying our whole judicial system, and providing the jury with the wrong instructions on how to apply the law to the facts to establish the essential elements of an offense undermines the trust that the judicial system places in the jury to reach a just and correct result. I think that a principle applies to both of the issues that I raised in this case. Now, just to finish up on the first issue, if you combine the plain language of the statute, defining the Class IV level of offense as requiring that the act of resistance was the proximate cause of the officer's injury, you read that in light of the committee comments to IPI Criminal 4.24, which in turn refers to the restricted definition of the definite article D in Siblin-Aller, and if you also apply the rule of lenity from People v. Perry, Supreme Court decision from 2007, one must conclude that the phrase the proximate cause expressly limited the effect of the statute to situations where a defendant's act was an immediate or direct cause of the officer's injuries, as opposed to simply a proximate cause or one of many. And as a matter of plain error, I would request that the report reverse Mr. Jeffries' conviction and demand for a new trial. With regard to the second issue raised in the brief, under People v. Sims, Felice and Jeffries retained a right of self-defense, even in circumstances of resisting arrest, where he had a reasonable belief that force was necessary to protect himself against the imminent use of unlawful force at the hands of the arresting officers. In the circumstances of this case, in these specific circumstances, the use of IPI Criminal 24-25.20, specifically instructing the jury that Mr. Jeffries was not entitled to resist under any circumstances, erroneously directed a finding against him on a disputed issue of whether he was justified in using force to protect himself against the officer's use of excessive force. Again, this Court recognized in James that fundamental fairness requires the trial court to give correct instructions on the elements of the offense. And as Sims pointed out, when the evidence at trial raises an inference of self-defense, that becomes an element which the state must overcome. This Court recognized that failure to properly instruct the jury on elements of the offense can constitute plain error, especially in cases where the evidence is closely balanced. In this case, despite Officer Carlton's obvious injury to his chin, and the jury acquitted Mr. Jeffries on both counts of aggravated battery with regard to that chin injury, given the conflicting evidence and the jury's verdicts, it is extremely difficult to discern which facts the jury accepted as true or whom the jury accepted as credible. It wasn't all or nothing. The verdicts indicate that they had trouble completely believing the officer's spin on what happened. Or the verdicts might simply indicate they were unwilling to convict him of everything because they thought it was too much. We don't know that, do we? We don't know that for sure. But, for instance... Isn't that part of the teaching of the Supreme Court's rejection of the doctrine of inconsistent verdicts? That we're not going to be putting too much into why the jury found the defendant guilty of X and not guilty of Y? Just because they can do it is all we're going to conclude? Well, my take on that is that the evidence here clearly conflicted, and the jury's verdicts recognized that there was a conflict in the evidence. So if the jury had returned all guilty verdicts, you wouldn't be making this argument? I would probably still be making the argument. But I believe that the fact that the jury returned acquittals on actually the more serious felonies, this type of aggravated battery against a police officer and causing injury to a police officer is a Class II felony. That's an indication that the jury did view the evidence as close and that they were struggling over it. And I think that informs the analysis of whether to apply plain error in this situation. Now, one can discern from the evidence presented that the jury reasonably could infer that the encounter was a mutual struggle between Mr. Jeffries and the officers. And the jury could reasonably infer from the evidence... I want to stop here. I'm talking about reasonable inferences from the evidence presented. A jury could have made a reasonable inference in this case that the officers used excessive force based on the injuries that were documented to Mr. Jeffries. So I'm the trial judge, your defense counsel. Why should I give the self-defense instruction? We've just heard the evidence, but it's not gone to the jury yet. Submit the instruction and argue for it. The entire theory of the defense all along in this trial was that Mr. Jeffries did not resist and that the officers used excessive force. That was the theme that counsel used throughout the trial in his cross-examination of the state's witnesses and of the officers. He repeatedly used the word beat. You beat my client, did you not? That was the theme of the defense, that he did not resist and that the officers used excessive force. In a case like this, where the applicable law under People v. Sims, and Sims was just the culmination of earlier cases, that was the most recent case that I could find. The state of the law under People v. Sims is that even in a resisting arrest case, if there is some evidence presented that the officers used excessive force, then the defendant is entitled to an instruction that any force that he used to resist was justified to protect himself from that excessive force. And that some evidence, from your perspective, is the testimony of the defendant himself? Of the defendant, of Tamika Ellis, and I would also note that some of the state's witnesses supported that evidence, supported that theory. Sergeant Feisig arrives on the scene. He notes that he saw the defendant bleeding from the head and face and that his breathing was heavy, and Sergeant Feisig was concerned, he was concerned enough that he called EMTs. And that was his testimony. He was a state's witness. Any exertion was going to cause a gentleman of this size possibly to... I mean, that's a reasonable inference, too. If you're wrestling to the ground in any fashion, as gently as possible, it may cause... My understanding of this area of the law, as exemplified in cases like People v. Sims, is that when the evidence can result in an arrest, it can result in an arrest. If the evidence can raise an inference, it's self-defense, the court should not speculate. It's not in the prerogative of a trial judge to take that away from the jury. That's a question for the jury. They should be instructed on the applicable law. They were not instructed on the applicable law in this case regarding a rival defense. If you had submitted the instruction, it would have been air for the court to decline it. Yes. I see my time is up. Thank you, Your Honor. Oh, and I would request reversal and remand for a new trial. We'll hear from you on rebuttal. Please support and counsel. The record doesn't show any evidence that the defendant acted in self-defense. The defense evidence was that the defendant was totally Gandhi-like. In fact, he explicitly said, I did nothing to defend myself. I stood motionless. He never did anything that could be construed as taking an act of defense and you have to admit the act in order to invoke the right to self-defense. There was absolutely no evidence. Both he and his wife were on the same page about the fact that the defendant did nothing that could be construed as an act of aggression. So your position is, from the state's point of view, this wasn't a case where the defense position was, yeah, I did that, but I had to do it in self-defense because the officer was engaged in improper conduct towards me and was beating me up. Instead, you're claiming that his position at trial was, I didn't do nothing, no how, neither. That's what he said explicitly. He said that the officers took hold of his arms and played tug-of-war and he said, I endured whatever they delivered. Is there any evidence from him or his witnesses that he struck any blows? No. No. In fact, they never even accounted for the other officers, Carlton's knee injury. There's evidence from the state, though, that the defendant struck the police officer. Oh, absolutely. And you're saying that the state's evidence cannot be used to allow the court to give self-defense instructions? But the state's evidence indicates that he's the aggressor. That's another element that you have to establish, that he was not the aggressor. Okay. You said earlier that the defendant had to admit that he struck the officers. Well, he had to admit engaging in self-defense. To get the instruction, but is that correct if the state's evidence itself shows that the defendant struck the officers? Is there a case on that? Yes. I cited a couple of cases in my brief. On page 36 of my brief, Diaz, defendants and their witnesses consistently asserted that none of the victims had been struck. So, denying self-defense was correct. And then the Chapman case, where no instruction on self-defense is applicable to an act that a defendant denies committing. And the defendant explicitly denied. He said he didn't do anything in self-defense. He was completely submissive. And his wife said the same thing. So, I think that's a death knell to his claim of self-defense. How about the independent eyewitness? She only saw the defendant strike Carlton's chin. The first blow that he delivered. She didn't see the other part. She saw him go after Carlton. She saw the first part of this episode, not the second part. How could the trial judge decide he was the aggressor? If he says he did nothing, and one witness says he did, in terms of striking the first blow, how could the judge weigh that if instruction was submitted? That would be some evidence on the issue of whether he was the aggressor. Yeah, but it would also be some evidence that he wasn't. I realize that you can take bits and pieces from the state's evidence. I'm saying if the instruction had been offered. There's a question about whether he was the aggressor. Because his testimony would have to be weighed against the other testimony. And the trial judge wouldn't be able to pick and choose. In this case, had a self-defense instruction been offered, would the trial judge have to have given it? My position is that he would not have. Because of the defense evidence, yes. But you said the evidence showed he was the aggressor. That's an evaluation of the evidence. That isn't a reason to give or not give the instruction, is it? It's true that you can look at the state's evidence as well. But the state's evidence conflicts with the idea that he was completely passive. And you have to satisfy these elements before you can get self-defense. Well, I suppose the question is, let's assume that there was no testimony offered in the defense. And if some of the state's evidence could be viewed as supporting a self-defense claim, wouldn't that be enough to permit self-defense on a request from the defense to be instructed? On the basis that there's some evidence that could support a claim of self-defense. But everything that the officers did, if you're looking strictly at the state's evidence, everything that they did was proportionate to what the defendant did. He's the one that turned it into a deadly force encounter by producing the knife. And he's the one that struck the officer first and went after the officer. Let me be more clear. Let's assume we have a murder case. The defendant never testifies. The state charges the defendant with shooting Smith. And one of the state's witnesses says, yeah, the defendant shot Smith in the parking lot. And I saw Smith reach into his belt and he started to pull out a gun. The defendant never testifies. I saw in the state's witnesses, I saw the victim. He started to pull out a gun and then the defendant shot him. I still think you'd have to have a perception from the defendant that he felt that was necessary before you could have self-defense. You can't have a third party. Well, the defendant doesn't want to testify because he's got this terrible sheet. But the defense attorney, you know, he's got all these impeachables and defense attorney things. Hey, the state's witness is going to establish some evidence of self-defense. The witnesses think that he was, the guy shot. The state's witness says he was pulling a gun. The victim was pulling a gun from his belt. That should be enough to get the instruction. I can argue that to the jury. Even in the absence of my client's testimony. Isn't that a correct statement of the law? Well, it's true that the defendant doesn't have to testify, but you would have to, you can't take a third party's view of what he may have perceived and seen and impute that to the defendant as showing that he acted in self-defense. So you don't think that a self-defense instruction in my scenario would apply? No. That's not the case before us, but it's an interesting point. One point Mr. Schuster made was that the jury received, and I think I heard correctly, the definition of proximate cause that's the criminal definition, but actually they were given the civil definition. It really doesn't make any difference because it is kind of an academic question given the fact that the defendant said, you know, I submitted, I didn't do anything, and there was no issue about proximate cause. The defendant didn't attribute the injury or the abrasion to Carlton's knee to anything that he did. And his defense attorney attributed the actions that Officer Cunningham engaged in, which was after the knee abrasion occurred, as the reason for the knee abrasion. And he was completely off target there because Cunningham, Tamika, and the defendant all said that Cunningham was the one that delivered the knee blows right before the defendant put his hands behind his back. They were having a battle at that point after he was on the ground. So there was nothing that the defendant testified to that could be an alternative proximate cause for the injury. Carlton said that it was the wrestling that he had to engage in when he was on his knees and they were trying to roll the defendant over on his stomach as the preliminary to getting his hands behind his back. And it was after he was on his stomach that the other officer had to deliver the knee blows because he was holding his hands beneath his torso. So... I think the defense counsel argued that if the officers used excessive force, that was the proximate cause of the injury, not the defense contact. Do you disagree with that? No, he specifically said it was because of the knee blows. And if you look at the closing argument... Well, you don't get to the knee blows under their theory if excessive force was used because the excessive force precipitated all of that. Wrong? Well, the excessive force issue is based on the defense version. Right. And the defense version is that he's already handcuffed and they engage in all these brutal acts against him. They start kicking his face and delivering the knee blows after he's handcuffed. Are you then arguing, counsel, that this court doesn't even need to consider the proximate cause versus a proximate cause? No, I think you can go right to the fact that in this situation, in this particular case, it really doesn't matter whether there's a distinction between the and a, even though the jury instructions here use the definite article. Okay, well... The issue centers on the proximate cause instruction. Just in case this court gets to that question, I assume you've read the Wilson case in the 3rd District. And I think your brief indicates that this court should follow Justice Schmitt's holding, which was... The lead opinion. The lead opinion, because then there were two special concurrences. I've read it a couple of times. I'd like to hear what the state's argument is specifically as to what exactly was Justice Schmitt saying in Wilson. Schmitt was saying that there is no difference between the and a, and the reason is he provided three main reasons. And the first one is that in the context of wrongful death or in a PI case, where you have an issue about whether the party was contributorily negligent, the jury is instructed to find the... They use the particular article, less than 100% proximate cause. And he said it makes no sense if the is meant to be the sole proximate cause. How can you have less than 100%? In other words, if they find that somebody is more than 50% responsible for an incident, then they cannot recover anything. And his logic is that if it's exclusive, if it's the sole reason, then how can you have that kind of instruction in the civil cases? And then he looked to the fact that in Hudson, the Illinois Supreme Court said that the civil proximate cause theories are equally applicable in criminal cases. Well, do you agree, Justice Schmidt, that the statute is not ambiguous? And as you are well aware of the special from current Justice McDade, criticized Justice Schmidt for taking that position. Well, I found Schmidt's reasoning to be pretty persuasive. And obviously, the other justices were concerned, particularly... I can't think of the third one, McDade or... Justice Holder. Yes. Where she referred to the one case that this court... excuse me, that the committee on... IPI committee thought was of some concern that the... does particularize the subject that it precedes. And... but even... even though the instructions in that case said... used the indefinite article, all three of them were on the same page, that there was no error. And this case is on a different... it's completely different because the jury was instructed about the definite article. So it focuses upon the proximate cause instruction that they received. And again, I don't see that proximate cause was really an issue in this case. They're saying that the officers engaged in these acts, but even... the defendant said that he was motionless. He did absolutely nothing to cause this injury. So... since Wilson doesn't require that the defendant's act of resisting be the sole and most immediate cause of injury to the officer, the proximate cause instruction in this case was correct. Are there any other questions from the court? Thank you. With regard to whether sufficient evidence was presented to entitle the defendant to a self-defense instruction, People v. Janik, which is an Illinois Supreme Court decision, and People v. Litta, which is an appellate court decision following Janik, specifically hold that where there is some evidence in the record, which if found credible by the jury would support a claim in the nature of self-defense, the defendant is entitled to the instruction. These cases do not limit that principle to strictly evidence presented by the defendant. Under these cases, it's the jury who determines who is the aggressor. It's the jury who determines whether there is sufficient evidence of self-defense. And it's not the prerogative of the trial court to take that question away from the jury. Well, the trial court didn't. No self-defense instruction was requested. I acknowledge that point. And I fall back on People v. Janik. Well, the problem is self-defense is hardly an unusual concept. And it seems to me if we were to reverse and remand the grounds that no self-defense instruction was given in this case, we're opening up the door to say to the defense bar, hey, don't be introducing self-defense at the trial level because you might win if the state can't prove the case. And if you don't, you can always argue to the appellate court that the trial court committed plain error by not giving a self-defense instruction based on the evidence presented. Well, courts are also cognizant. It has always been my belief that courts are also cognizant about what was fair in a particular case, what was fair, what was due process in the particular case before the court. And my suggestion is in this particular case, the defendant's due process rights were violated because there was evidence of self-defense and a proper instruction wasn't given. So let me ask you then to distinguish. If we were to agree with you in this case, what would be the basis upon which we could say, well, it's true in the Jeffries case this court reversed and remanded finding plain error because there was some evidence of self-defense and the trial court didn't instruct the jury. But by God, in this new case where there's some evidence of self-defense and the trial court failed to instruct the jury, we're not going to reverse and remand. Can you provide some guidance on how we would make that call? You did it before in James. So then going back to my original question here in rebuttal, why wouldn't a defense counsel be kind of silly to actually ask the trial judge to give the self-defense instruction when one, maybe I can beat the case because the state can't prove it, and two, hey, I got automatic reversal coming out of appeal because it's plain error. I acknowledge your point, Your Honor. I cannot think of another response at this time. With regard to the Wilson case, Justice Turner, you discussed that at length. The Wilson court and Justice Smith did not have the benefit of IPI criminal 4.24 or its accompanying committee comments. The Wilson case was issued in 2010. The new IPI and the committee comments came out in 2011. I would suggest that the committee comments demonstrate the IPI committee's skepticism with regard to Justice Smith's observation in that case. And they tend to support Justice McKay's observations that this is a problematic area of the law and that it's problematic to use this definitional instruction in the specific case of resisting a peace officer with injury. If there are no further questions, I'll request reversal and remand. Thank you, counsel. We'll take this matter under advisement.